## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Fifth Market, Inc., a Tennessee corporation, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 1:08-cv-00520-GMS |
| v. | ) ) JURY TRIAL DEMANDED |
| CME Group, Inc., a Delaware corporation, and | ) ) ) ) |
| Chicago Mercantile Exchange, Inc., a Delaware corporation, | ) ) ) ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff, Fifth Market, Inc. ("Fifth Market"), by and through its attorneys, for its First Amended Complaint against Defendants, CME Group, Inc. and Chicago Mercantile Exchange, Inc., jointly and severally, hereinafter collectively referred to as "Defendants," states as follows:

1. Plaintiff Fifth Market is a Tennessee corporation with a principal place of business at 104 Woodmont Boulevard, Nashville, Tennessee 37205.

2. Defendant Chicago Mercantile Exchange, Inc. (hereinafter "CME") is a corporation formed under the laws of the State of Delaware with its principal place of business at 20 S. Wacker Drive, Chicago, Illinois. CME may be served at the offices of its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3. Defendant CME Group, Inc. (hereinafter "CME Group") is a corporation formed under the laws of the State of Delaware with its principal place of business at 20 South

Wacker Drive, Chicago, Illinois. CME Group may be served with process within the State of Delaware at the offices of its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. Upon information and belief, all of the Membership of CME is held by CME Group. Also upon information and belief, each Membership of CME may not be transferred to or held by an entity other than CME Group, unless authorized by an amendment to the Certificates of Incorporation, and that the Members of CME, each effectively has the exclusive right to vote on any matter to be voted on by the members of CME unless otherwise authorized by CME Group or applicable law. Further, the Certificate of Incorporation of CME states that the Board of Directors of CME shall at all times be comprised of the same directors as those of CME Group. Accordingly, upon information and belief, Plaintiff alleges that CME Group is the alter ego or agent of CME, specifically alleging as follows:

    a) CME is dominated by CME Group;

    b) there is an overlapping business relationship between CME Group and CME that is controlled by CME Group;

    c) CME Group files a consolidated financial statement including CME;

    d) CME Group possesses the capacity to influence the major business decisions of CME;

    e) there is unity of interest and ownership such that the separate personalities of each subsidiary and parent no longer exist;

    f) CME Group exercises complete authority over the general policy of CME;

g) there is a close connection relationship between the defendants and the cause of action; and;

h) an inequitable and/or unjust result will follow if CME Group is not held liable for the liability of CME.

5. CME Group/CME has used and continues to use and have its customers use the Globex® platform owned, provided and operated by CME Group/CME, for electronic trading of, among other products, futures, commodities, financials and derivatives.

## JURISIDICTION AND VENUE

6. This is an action for patent infringement arising under the acts of Congress for violations relating to patents, namely The Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. Upon information and belief Defendants CME Group/CME have solicited business in the State of Delaware, are doing business in this judicial district, and have attempted to derive financial benefit from residents of the State of Delaware, including benefits directly related to the instant cause of action set forth herein.

9. In addition, CME Group/CME are residents of this judicial district and each has appointed a resident agent in Delaware, as set forth hereinabove.

10. Defendants CME Group/CME have committed and continue to commit acts of patent infringement in this district. Therefore, this Court has specific jurisdiction over CME Group/CME.

11. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) in that, among other things, the acts of infringement complained of have been committed in this judicial district, and Defendants CME Group/CME reside in this judicial district.

## FACTS AND STATEMENT OF CLAIM

## FACTS

12. At all times relevant to this action, Defendants CME Group/CME owned, controlled, and operated a computerized trading network known variously as "Globex" and "Globex2" [hereinafter referred to as "Globex"].

13. Defendants CME Group/CME operated Globex as an electronic trading network beginning on or about July 1, 1992, upon Plaintiff's best information and belief.

14. Defendants CME Group/CME initially operated the Globex trading network as a basic trade matching system, which basic trade matching system is not alleged to infringe claims of the patents-in-suit, upon Plaintiff's best information and belief.

15. On or about January 2003, Defendants CME Group/CME modified the Globex trading network such that the program began electronically comparing and matching buy and sell orders for a plurality of items based upon conditions set forth within the order, including price represented as an algorithm with constraints thereon, upon Plaintiff's best information and belief.

16. On or about Summer 2004, and continuing since that date, Defendants CME Group/CME further modified the Globex trading network to perform algorithmic trading, evidence by "implied out trading," upon Plaintiff's best information and belief.

17. Defendants CME Group/CME also owned, operated, and controlled, a plurality of trader workstations using operating software that was also owned, maintained, and

4

controlled by Defendants CME Group/CME, with the trader terminals and software known as "EOS Trader," upon Plaintiff's best information and belief.

18. Defendants CME Group/CME operated the EOS Trader software and terminals as integral and material components to the Globex trading network from at least Summer 2004 and continuing therefrom, upon Plaintiff's best information and belief.

19. Defendants CME Group/CME knows the EOS Trader software and terminals are especially made for use in the Globex trading network, upon Plaintiff's best information and belief.

20. The EOS Trader workstation and its operational software was provided to clients of Defendants CME Globex/CME with the intent that the users of the EOS Trader workstation would use it to connect to and interface with the Globex trading network, upon Plaintiff's best information and belief.

21. Defendants CME Group/CME sold software and/or licenses of the EOS Trade workstation and its operational software, as a component of the Globex trading network, upon Plaintiff's best information and belief.

22. In addition to the EOS trader workstation, Defendants CME Globex/CME also provided coding specifications for trader workstation operating programs with the intent that such specifications direct the development of outside-vendor third-party software for control of trader workstations to interface with the Globex trading network. Defendants CME Globex/CME then inspected and authorized the third-party software for control of trader workstations for use on its Globex trading network, upon Plaintiff's best information and belief.

23. The outside-vendor third-party trader workstation operating programs were developed under the direction of CME Globex/CME in that the programs were required to conform to specific protocols dictated by CME Globex/CME, and the programs were subject to inspection and testing by Defendants CME Globex/CME before receiving approval to interface with the Globex trading network, upon Plaintiff's best information and belief.

24. Defendants CME Group/CME knew, and continues to know, that its customers would use the Globex trading network, the EOS trader workstation, and/or the outside-vendor third-party trader workstation operating programs.

25. The Globex trading network is not a staple item of commerce capable of substantial noninfringing uses.

26. The EOS trader workstation is not a staple item of commerce capable of substantial noninfringing uses.

27. The outside-vendor third party software for control of the trader workstations to interface with the Globex trading network are not staple items of commerce capable of substantial noninfringing uses.

28. The traders/customers of Defendants CME Group/CME actually used and continue to use the Globex trading network, the EOS trader workstation, and/or the outside-vendor third-party trader workstation operating programs.

29. On or about Spring 2007, Defendants were contacted by phone by Plaintiff, wherein Plaintiff notified Defendants of the existence of the '419 and '387 patents, and that such patents were relevant to the Defendants' businesses, and at least as of that date, Defendants CME Group/CME has committed knowing, intentional, and willful

infringement of the patents-in-suit and active inducement of others to infringe the patents-in-suit.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,418,419

30. Plaintiff Fifth Market realleges and incorporates paragraphs 1-29 as if set forth herein in full.

31. Plaintiff Fifth Market is the owner of U.S. Patent No. 6,418,419 (the "'419 patent"), titled "Automated System For Conditional Order Transactions in Securities or other Items in Commerce," which issued on July 9, 2002. A copy of the '419 patent is attached as Exhibit A.

32. Plaintiff Fifth Market is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287.

33. Defendants CME Group/CME have infringed and/or continue to infringe the '419 patent by making, using, selling and/or offering for sale products and methods covered by claims of the '419 patent without Plaintiff Fifth Market's authorization, in violation of 35 U.S.C. § 271(a).

34. Defendants CME Group/CME have infringed and/or continue to infringe the '419 patent, specifically by infringement of Claims 24 through 43. The Globex trader network, capable of "implied out trading," infringes the '419 patent, Claims 24 through 43.

35. The EOS trader workstation and its operational software infringes the '419 patent, Claims 24 through 40 and 42.

7

36. The outside-vendor third party software for control of the trader workstations to interface with the Globex trading network, created at the direction of Defendants CME Group/CME, infringes the '419 patent, Claims 24 through 40 and 42.

37. In addition, Defendants CME Group/CME's actions have constituted and/or continue to constitute contributory infringement of the '419 patent in violation of 35 U.S.C. § 271 (c).

38. Upon information and belief, Defendants CME Group/CME sold a material component of a patented machine, with knowledge that the component was especially adapted for use in infringing the '419 patent, specifically by selling software and/or licenses to traders/customers for use of the Globex trading network.

39. Upon information and belief, Defendants CME Group/CME sold a material component of a patented machine, with knowledge that the component was especially adapted for use in infringing the '419 patent, specifically by selling software and/or licenses to traders/customers for the EOS trader workstation to be used with the Globex trading network.

40. In addition, Defendants CME Group/CME's actions have constituted and/or continue to constitute the active inducement of others under 35 U.S.C. § 271(b) to engage in direct infringement under 35 U.S.C. § 271(a) with a knowledge and an intent to induce the specific infringement of the '419 patent.

41. Upon information and belief, Defendants CME Group/CME significantly, actively, and intentionally aided, abetted, participated in and were and are a proximate, contributory and concurring cause of the aforesaid infringement, because, without

limitation, Defendants CME Group/CME induced others to use, sell and/or offer to sell the infringing products and methods.

42. Defendants CME Group/CME actively induced infringement of the '419 patent by directing and controlling the development of outside-vendor third party software for control of the trader workstations to interface with the Globex trading network.

43. Defendants CME Group/CME actively induced infringement of the '419 patent by requiring traders/customers to use EOS trading software and/or outside-vendor third party software for control of trader workstations to interface with the Globex trading network.

44. Defendants CME Group/CME intended that the EOS trading software and outside-vendor third party software for control of trader workstations would be used to interface with the Globex trading network.

45. Defendants CME Group/CME EOS trading software and outside-vendor third party software was actually used to control trader workstations and to interface with the Globex trading network, and thereby to infringe the '419 patent.

46. Defendants CME Group/CME had actual and/or constructive knowledge that its traders/customers would use the Globex trading network, EOS trading software, and/or the outside-vendor third party software, and thereby Defendants CME Group/CME's traders'/customers' use would and did infringe the '419 patent.

47. Defendants CME Group/CME had an affirmative specific intent to cause others, specifically the traders/customers, to directly infringe the '419 patent.

48. Defendants CME Group/CME's infringement of the '419 patent is willful, deliberate and intentional pursuant to 35 U.S.C. §§ 284 and 285.

49. By Defendants CME Group/CME's infringement of the '419 patent, it has made unlawful gains and profits, and Fifth Market, due to the same infringing conduct, has been deprived of rights and remunerations that would have otherwise come to Fifth Market, but for the infringement. Defendants CME Group/CME have thus caused irreparable harm to Plaintiff Fifth Market and will continue to do so unless enjoined.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 7,024,387

50. Plaintiff Fifth Market realleges and incorporates paragraphs 1-49 as if set forth herein in full.

51. Plaintiff Fifth Market is the owner of U.S. Patent No. 7,024,387 (the "'387 patent"), titled "Automated System For Conditional Order Transactions in Securities or Other Items in Commerce," which issued on April 4, 2006. A copy of the '387 patent is attached as Exhibit B.

52. Plaintiff Fifth Market is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287.

53. Defendants CME Group/CME have infringed and/or continue to infringe the '387 patent by making, using, selling and/or offering for sale products and methods covered by claims of the '387 patent without Plaintiff Fifth Market's authorization, in violation of 35 U.S.C. § 271(a).

54. Defendants CME Group/CME have infringed and/or continue to infringe the '387 patent, specifically by infringement of Claims 3, 5, 6, 11, and 12.

55. The Globex trader network, capable of "implied out trading," used with the EOS trader workstation infringes the '387 patent, Claims 3, 5, 6, 11, and 12.

56. The Globex trader network, capable of "implied out trading," used with the outside-vendor third party software for control of the trader workstations to interface with the Globex trading network, created at CME Group/CME's direction, infringes the '387 patent, Claims 3, 5, 6, 11, and 12.

57. In addition, Defendants CME Group/CME's actions have constituted and/or continue to constitute contributory infringement of the '387 patent in violation of 35 U.S.C. § 271 (c).

58. Upon information and belief, Defendants CME Group/CME sold a material component of a patented machine, with knowledge that the component was especially adapted for use in infringing the '387 patent, specifically by selling software and/or licenses to traders/customers for the EOS trader workstation to be used with the Globex trading network.

59. In addition, Defendants CME Group/CME's actions have constituted and/or continue to constitute the active inducement of others under 35 U.S.C. § 271(b) to engage in direct infringement under 35 U.S.C. § 271(a) with a knowledge and an intent to induce the specific infringement of the '387 patent.

60. Upon information and belief, Defendants CME Group/CME significantly, actively, and intentionally aided, abetted, participated in and was and is a proximate, contributory and concurring cause of the aforesaid infringement, because, without limitation, Defendants CME Group/CME and NYMEX induced others to use, sell and/or offer to sell the infringing products and methods.

61. Defendants CME Group/CME actively induced infringement of the '387 patent by directing and controlling the development of outside-vendor third party software for control of the trader workstations to interface with the Globex trading network.

62. Defendants CME Group/ CME actively induced infringement of the '387 patent by requiring traders/customers to use EOS trading software and/or outside-vendor third party software for control of trader workstations to interface with the Globex trading network.

63. Defendants CME Group/CME intended that the EOS trading software and outside-vendor third party software for control of trader workstations would be used to interface with the Globex trading network.

64. Defendants CME Group/CME EOS trading software and outside-vendor third party software was actually used to control trader workstations and to interface with the Globex trading network, and thereby to infringe the '387 patent.

65. Defendants CME Group/CME had actual and/or constructive knowledge that its traders/customers would use the Globex trading network, EOS trading software, and/or the outside-vendor third party software, and thereby Defendants CME Group/CME's customer's use would and did infringe the '387 patent.

66. Defendants CME Group/CME had an affirmative specific intent to cause others, specifically the traders/customers, to directly infringe the '387 patent.

67. Defendants CME Group/CME's infringement of the '387 patent is willful, deliberate and intentional pursuant to 35 U.S.C. §§ 284 and 285.

68. By Defendants CME Group/CME's infringement of the '387 patent, they have made unlawful gains and profits, and Fifth Market, due to the same infringing conduct,

has been deprived of rights and remunerations that would have otherwise come to Fifth Market, but for the infringement. Defendants CME Group/CME have thus caused irreparable harm to Plaintiff Fifth Market and will continue to do so unless enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fifth Market prays for judgment and relief including:

(A)   Judgment, jointly and severally, that Defendants CME Group/CME have been and are infringing one or more claims of the '419 and '387 patents pursuant to 35 U.S.C. §§ 271(a), (b) and/or (c);

(B)   Preliminary and permanent injunctive relief prohibiting and enjoining Defendants CME Group/CME, and each of their officers, agents, servants, employees, licensees, attorneys, related business entities and all those acting or attempting to act in active consent or participation with them from infringing the '419 and '387 patents;

(C)   A judgment, jointly and severally, that Defendants CME Group/CME be ordered to account for and pay all damages caused by reason of CME Group/CME's infringement pursuant to 35 U.S.C. § 284, including enhanced damages for willful infringement under 35 U.S.C. § 284 or an amount to be determined by the Court;

(D)   A judgment, jointly and severally, that CME Group/CME be ordered to pay Fifth Market's costs, expenses and reasonable attorney's fees pursuant to 35 U.S.C. §§ 284 and 285;

(E)   An award of pre-judgment and post-judgment interest on the damages caused to Fifth Market by CME Group/CME's infringement; and

(F)   Such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff Fifth Market demands trial by jury on all issues so triable.

Dated: May 20, 2009                    **CROSS & SIMON, LLC**

*[signature]*
Christopher P. Simon (No. 3697)
Sean T. O'Kelly (No. 4349)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19801
(302) 777-4200
(302) 777-4224 (facsimile)
csimon@crosslaw.com
sokelly@crosslaw.com
*Attorneys for Plaintiff Fifth Market, Inc.*

Of Counsel

Michael K. Mutter
Quentin R. ("Rick") Corrie
Michael K. Botts
BIRCH, STEWART, KOLASCH & BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
P.O. Box 747
Falls Church, VA 22040-0747
(703) 205-8000
(703) 205-8050 (facsimile)
*qrc@bskb.com*
*mkb@bskb.com*
*mailroom@bskb.com*