IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Fifth Market, Inc.,<br>   a Tennessee corporation,<br><br>   Plaintiff,<br><br>v.<br><br>CME Group, Inc., *et al.*,<br><br>   Defendants. | C.A. No. 1:08-cv-00520-GMS<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF FIFTH MARKET'S
### MOTION FOR ENLARGEMENT OF TIME TO FILE INITIAL EXPERT REPORTS

1. At every turn, Plaintiff has cooperated with Defendants to obtain reasonable discovery responses from Defendants. To date, that effort has been thwarted, to such a degree that proportion of adequate expert reports, due today, is not possible.

2. Plaintiff Fifth Market propounded its discovery requests over a year ago, at the very beginning of the discovery period, in April 2010. Defendant CME Group responded with absolutely no documents and nothing but evasive and outright refusals to answer interrogatories. On May 27, 2010, Plaintiff sent counsel for CME Group a 7-page letter detailing the deficiencies in the discovery responses. Exhibit A.

3. On June 3, Defendants offered to discuss proper discovery responses. Exhibit B. Discussions continued between the parties without progress. See also Exhibit C. Plaintiff (Botts) e-mail to Defendants (Baker), dated July 7, 2010, detailing again the Defendant's failures to respond to discovery requests.

4. On June 14, 2010, at the same time Plaintiff was negotiating for proper document production and interrogatory responses, it sought discovery of Defendants ESI, proposing carefully crafted key word searches with proximity limiters to ensure only solid discovery hits,

along with an offer to negotiate any search that returned disproportionate hits. Exhibit D. Defendants refused Plaintiff's terms and, with the exception of the names of the inventors, the Plaintiff, and the patent numbers, offered instead to search essentially 4 search terms. Exhibit E. Still, Plaintiff attempted to cooperate with Defendants for a reasonable ESI search. Exhibit F.

5.  Discovery disputes and attempts to work out the differences continued. On August 11, Defendants stated that they had no intention of conducting a proper ESI search: "As you know, CME has already produced tens of thousands of pages of documents .... As I previously explained, we have collected and produced these documents without reliance on keyword searches. We expect that the bulk of any further document production will also be made without the need for keyword searching." Exhibit G.

6.  Finally, Defendants admitted that they were refusing to respond discovery requests based on a strict "fact pleading" reading of the complaint. Plaintiff confronted Defendants on that issue in an e-mail dated September 3, 2010. Exhibit H, initial e-mail. In response, Defendants essentially admitted the "fact pleading" restriction and agreed to "withdraw our objection to your discovery requests that were based on the grounds that the requests sought discovery regarding trading strategies that were outside the scope of the complaint." Exhibit H, response e-mail dated September 7, 2010. Plaintiff continued to seek Defendants' cooperation with proper discovery.

7.  The issue of Defendants' discovery deficiencies based on "fact pleading" was a topic of the Court's first discovery conference call on December 9, 2010. *See* D.I. No. 85, Plaintiff's issues 1 and 2. The Court made clear that a "notice pleading" standard was not appropriate. D.I. No. 102, pp. 14-15.

8.  Defendants continued to refuse to conduct reasonable ESI searches and to provide

reasonable discovery responses, and those failures were made a topic of the Court's second discovery conference call on March 10, 2010. See D.I. No. 121, Plaintiff's topics 2, 4, and 6. During the conference with the Court, Defendants agreed to provide a written description of their searches. D.I. No. 123, p. 28. Defendants were clearly instructed as follows: "CME, there can't be a hyper-technical reading of the discovery rules and the Federal Rules of Civil Procedure. You know that the rules contemplate liberal discovery, will not tolerate a hide-the-ball approach to litigation in Federal Court. And this particular Judge particularly abhors that kind of approach." D.I. No. 123, pp. 28-29.

9. On March 18, 2011, Defendants (a group that now included several new defendant subsidiaries of CME) produced their summary of their search for documents responsive to Plaintiff's discovery requests. Exhibit I. Most notably, there is little evidence of any ESI search, and Defendants failed or refused to search for any documents responsive to at least 5 discovery requests, such requests including documents related to marketing the infringing system. Plaintiff concluded that Defendants' search had been wholly insufficient and again demanded a proper search of relevant ESI, and proper responses to all discovery requests.

10. Plaintiff continued to urge Defendants to provide proper discovery responses. Even prior to and following the *Markman* hearing, Plaintiff's counsel attempted to reach agreement on discovery. On April 12, 2011, Plaintiff contacted Defendants with yet another attempt to secure a valid ESI search. Exhibit J.

11. The fact discovery cut off in this case was April 14, 2010 (moved from an original March 31 date to accommodate a postponed *Markman* hearing). On the day before the discovery cut off, April 13, Defendants offered to run an ESI search on their records. Exhibit K, page 2. There was no discussion or agreement as to the search terms. The next day, by agreement of the

3

parties to accommodate scheduling problems, Defendants' served their combined discovery responses, and effectively provided zero materials from which Plaintiff's damages expert might assemble a report. This inexplicable shortfall is one topic of conversation in tomorrow morning's telephone conference with this Court.

12. On April 19, five days after the close of discovery, Defendants informed Plaintiff that it had identified 2.5 million pages of documents by searching, essentially 5 or 6 words. (Defendants searched for the names of the inventors, the prosecution attorney, the Plaintiff, and the patent numbers, but review of the results by Plaintiff's counsel indicates that there were essentially no hits on those terms.) Exhibit K, pp. 1-2. Plaintiff wonders what relevant documents would have been identified with a full reasonable search of the ESI.

13. Defendants' limited search of a small number of terms with a significant number of hits is persuasive proof that had a valid ESI search been done a year ago, it is likely that relevant documents would have been identified. Additionally, the number of documents identified by Defendant's limited search, when compared to the few documents actually produced over the last years, betrays Defendants' claims to have conducted a full and reasonable search for documents without searching ESI as a baseless and highly prejudicial denial of relevant discovery to the Plaintiff.

14. On April 26, 2011, Defendants made their first of seven partial production of their ESI documents. Exhibit L. The partial productions continued well after the fact-discovery cutoff, through May 4, 2011. Exhibit M.

15. Since the close of discovery on April 14, 2011, Defendants have produced some 170,000 pages of documents. See Exhibit N, document production letter dated April 15, producing documents starting at Bates Number 70070. To place Defendants' late discovery in

further context, at the beginning of March, 2011, nearly a year into the case and just weeks before the close of discovery, Defendants had only produced about 50,000 pages of documents. Exhibit O.

16. To further compound Plaintiff's inability to provide documents to its expert witnesses, the late produced documents were not even produced in searchable format, despite an agreement among counsel to produce in that format (Plaintiff did). Plaintiff had to convert the nearly 170,000 pages of images to a word searchable format in order to be able to be able to reasonably access the contents. As of the time of filing this Motion, Plaintiff's large commercial documents management company, CRG, Inc., is still converting the documents to a searchable format, a task that has now taken more than seven days.

17. Of course, deposition discovery becomes particularly difficult in the face of this wholly deficient document production. Especially where those depositions were effectively barred by Defendants' 48-page objection set served in the last week of scheduled discovery, on every topic. See Exhibit P (CME Group's April 15, 2011 objections to Fifth Market's Rule 30(b)(6) notices). Plaintiff promptly rejected the objections, and asked CME Group to bring any objections it had to scope or otherwise to this Court. Defendants refused and have tendered witnesses for only one-third of the requested topics, and wholly refused to tender the remaining deposition witnesses unless Fifth Market agrees to "clarify and narrow" its topic sets. These problems will be discussed in more detail with the Court in the morning.

18. As a result of Defendants' refusal to conduct a reasonable ESI search of documents, and its refusal to provide relevant and proper answers to interrogatories and requests for production, and to permit open Rule 30(b)(6) deposition discovery, Plaintiff has not received proper or sufficient documents or narrative testimony to provide to its experts for adequate initial

5

opinions.

19. In keeping with express directions from this Court to work with the opposing party to resolve discovery issues, Plaintiff has tried at every turn to cooperate with Defendants in order to obtain response discovery, including an email as recently as last Friday cataloguing these discovery deficits. See Exhibit R, May 13, 2011 Botts email to Delaney. However, Defendants have not cooperated in discovery, and now refuse to consider any expert witness discovery enlargements.

20. Plaintiff has been highly prejudiced by Defendants' refusal to conduct proper discovery.

21. Plaintiff's document manager has been able to roll out some searchable documents, and Plaintiff has been able to word search about 12,000 documents, with another 8,000 documents remaining. Plaintiff openly admits that the results of the preliminary examination may be biased based on the pool of documents; however, so far Plaintiff has found that nearly all documents dated from 2008 and earlier, and that there are no accessible financial records and essentially no documents relating to the operation of the Defendants' infringing GLOBEX electronic trading system. Therefore, even the late-produced documents do not appear to contain reliable information upon which an expert may base an opinion. The documents pool may yet reveal a relevant document, but it is far too late for such documents to be relied upon by an expert in time for the due date for initial reports.

22. Plaintiff has requested permission to file Motions to Compel Defendants to remedy their discovery deficiencies, and such is noted in the topics requested for the Third Discovery Conference call scheduled for tomorrow, May 17, 2011. D.I. No. 178.

WHEREFORE, Plaintiff prays this Court to grant an enlargement of time within which to

submit Plaintiff's initial expert opinions, and for such other relief as this Court deems just and reasonable.

Dated: May 16, 2011

**CROSS & SIMON, LLC**

*/s/ Sean T. O'Kelly*

Sean T. O'Kelly (No. 4349)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19801
(302) 777-4200
(302) 777-4224 (facsimile)
sokelly@crosslaw.com
*Attorneys for Plaintiff Fifth Market, Inc.*

Of Counsel:

Quentin R. ("Rick") Corrie, *pro hac vice*
BIRCH, STEWART, KOLASCH & BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
P.O. Box 747
Falls Church, VA 22040-0747
(703) 205-8000 / (703) 205-8050 (facsimile)
qrc@bskb.com

and

Michael K. Botts, *pro hac vice*
MICHAEL K. BOTTS, ATTORNEY AT LAW
1629 K. St., N.W., Suite 300
Washington, DC 20006
(703) 780-1295 / (703) 780-2035 (facsimile)
mkbotts@verizon.net

and

J. Gregory Whitehair, *pro hac vice*
The Whitehair Law Firm, LLC
12364 W. Nevada Pl., Suite 305
Lakewood, CO 80228
(303) 908-5762
jgw@whitehairlaw.com